## THE STATE vs. LA'FAYETTE F. MAIN.

Second Judicial District, Norwich, April Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

To constitute theft the taking must not only be wrongful, but must be accompanied with an intent to deprive the owner of his property. If the accused takes the property in the honest, though mistaken, belief that it is his own, he is entitled to an acquittal.

It is within the discretion of the trial court, and at times may be its duty, to let the jury understand, directly or indirectly, its own opinion of the weight of testimony, provided it is done fairly and properly and within the limits fixed by law.

An assignment of error, to the effect that the trial judge failed to call the attention of the jury to the importance of certain facts claimed to have been proved by the accused, is not supported by a record which is entirely silent in respect to that matter. To present such a question the record should be framed accordingly—setting forth fully the state of the evidence and what the court did say about it.

Upon a trial for stealing a heifer, a boy who was a witness for the State testified that he assisted in driving the heifer to the barnyard of the accused, where the latter cut a hole in her left ear with a punch. On cross-examination he testified that he had talked with K about this, had said to K that he had seen the red heifer and that the accused had marked one, but did not tell where the accused had marked it. Held that it was not error for the trial court to exclude a question, subsequently asked of K for the purpose of contradicting the boy's statement on cross-examination, whether the boy had not said to him, K, that he had seen the accused cut a hole in the heifer's ear.

The mere refusal of the trial court to permit counsel for the accused to read to the jury that part of the statute which prescribes the punishment for the offense charged, cannot ordinarily be regarded as unduly restricting counsel from urging upon the jury the exercise of a deliberate caution proportioned to the seriousness of the crime. In some cases latitude may well be allowed counsel in referring to matters of general knowledge touching the nature and gravity of the offense charged; but the exercise and extent of such references in particular cases must be left largely to the discretion of the trial court.

Argued April 29th—decided June 11th, 1902.

INFORMATION for theft of a heifer, brought to the Supe-

rior Court in New London County and tried to the jury before *Thayer, J.;* verdict and judgment of guilty, and appeal by the accused for alleged errors in the rulings and charge of the court. *No error.*

The information charges the theft of one heifer of the value of $20, on or about the 1st day of September, 1900.

A statute passed in 1893 makes the theft of a heifer, irrespective of its value, punishable by imprisonment in the State's prison. Prior to that time punishment for such theft was graded according to the value of the animal stolen, and the imprisonment provided was in jail when that value was under $50.

During the year 1900 Horace T. Knight, the owner of the stolen property, occupied a farm adjoining a tract of some 700 or 800 acres of land used by the owners thereof in common, for pasturage, and had the right to pasture his cattle on said tract; and the defendant occupied a farm adjoining said tract with the right to pasture his cattle thereon.

It was admitted by the claims of the State and defendant, that a yearling red heifer, which was the subject of the alleged theft, was, in the spring of 1900, turned upon said tract of land to pasture for the season; that late in the fall this heifer was driven by the defendant from said tract of land to his farm adjoining, and remained in his possession until June, 1901, when it was replevied at the suit of the said Knight; that at the time it was replevied it had a hole punched through its left ear; that several years before the defendant had adopted and had recorded as a mark for his cattle a hole punched through the left ear.

The State offered evidence to prove and claimed to have proved that said Knight in May, 1900, owned and possessed a yearling red heifer, having marks by which it could be and was identified, and turned said heifer with other yearlings belonging to him into said tract for pasturage during the season; that late in the fall defendant feloniously took said heifer from said tract of land, where she was in the possession of said Knight, he, the defendant, knowing her to be the property of Knight, and drove her to his farm and held

State v. Main.

her there, claiming her as his own until she was replevied as aforesaid; that the defendant at the time he so took said heifer, viz., late in October, 1900, and immediately after he had so driven her to his farm, punched a hole in her left ear; that during the years of 1899 and 1900 the defendant did not own any red heifer.

The defendant offered evidence to prove and claimed to have proved that in 1899 he raised a red heifer, and on May 30th, 1899, when said heifer was eight weeks old, marked her with a punch through the left ear; that in the spring of 1901 he turned said heifer, so marked, with other yearlings belonging to him, into said tract of land for pasturage; that said red heifer remained there until late in the fall, when he took her to his farm and kept her until replevied as stated; that said red heifer was his property; that he took her from said tract to his farm openly; and that he had openly claimed ownership of her to Knight and others.

The defendant made no request to charge. Upon the matter of a felonious taking the court charged as follows and not otherwise: ". . . The information charges that on the first day of September, 1900, he (the defendant) feloniously stole and drove away a heifer, the property of Knight. To constitute the crime here charged there must have been a wrongful taking and driving away of the heifer with the felonious intent of depriving the owner of the heifer by appropriating her to the use of another. A mere taking and driving her away would not constitute the crime, therefore, although the taking might have been wrongful or unlawful. A person may wrongfully take another's property through mistake, in which case it would not constitute a crime, although it might render the person taking it liable in a civil action. To make it a crime it must have been taken with a criminal intent. Where a person, knowing that a thing is the property of another, secretly takes it from that other's possession with the intention to deprive him of it and appropriate it to the taker's own use, there is a criminal intent—a felonious taking. To drive away another's cattle from a pasture where he had placed them, with such knowledge and intent, would

State v. Main.

constitute the crime charged—a theft of such person's cattle.
. . . And they claim to have proved by a number of wit-
nesses that the heifer which was then replevied was the one
which Knight turned into the pasture and which was in the
pasture during the summer. And thus the State claims to
have proved the ownership of the heifer in Knight, that the
accused wrongfully stole, took and drove her away out of the
pasture where she rightfully was, and that he did it knowingly
with criminal intent to appropriate her to his own use and so
deprive Knight of his property. This, if proved, would es-
tablish the guilt of the accused."

"Counsel for defendant in argument was about to state to
the jury the punishment prescribed in Chap. 113, Public Acts
of 1893, on which this information is based, when the State's
Attorney objected and the court sustained the objection.
Thereupon the defendant's counsel proposed to read the whole
of said statute to the jury for the purpose of getting before
them the punishment prescribed for the crime charged in the
information. The State's Attorney objected to the reading
of that portion prescribing the punishment, and the objection
was sustained. The defendant's counsel duly excepted to
the ruling in each instance."

The appeal assigns error in the charge on the subject of a
felonious taking, and in failing to call the attention of the
jury to facts the defendant claimed to have proved, namely,
that he took the property openly, claiming it as his own, and
that a taking under such circumstances was not a felonious
taking ; it further assigns error in not permitting counsel to
read to the jury that part of the statute describing the pun-
ishment for the offense charged, and errors in certain rulings
on admission of evidence.

Abel P. Tanner and Donald G. Perkins, for the appellant
(the accused).

Solomon Lucas, State's Attorney, for the appellee (the
State).

State v. Main.

HAMERSLEY, J. The charge of the court on the subject of a felonious taking is correct, clear and adequate.

The substantial defense of the accused was that he owned the heifer and that his taking was lawful and not wrongful. He also put forward an alternative defense, namely, assuming the heifer to have been the property of another and that the accused took it wrongfully, yet he took it openly and under a claim of ownership. The court stated the law applicable to this alternative defense fully and fairly. It told the jury that to constitute the crime there must be not only a wrongful taking, but a wrongful taking with the intent of thus depriving the real owner of his property by appropriating it to the use of the taker; that although the property of another is wrongfully taken, yet if taken through mistake, theft is not committed; there must be a taking with a criminal intent and, as bearing upon the facts and claims in the case, a felonious taking requires a knowledge in the taker that the thing taken is the property of another, and an intention to deprive the owner thereof by appropriating it to his own use, whether it is property secretly taken or cattle wrongfully driven from a pasture where the owner has placed them.

The jury could not have been misled by this charge. They must have acquitted the accused if they followed these instructions, if it appeared from the evidence that the accused had taken the heifer in the honest, although mistaken, belief that it was his own property.

This assignment of error is improperly framed in adding to the claim of error in the statement of law by the court an apparent claim that the court also erred in not calling the attention of the jury to the importance of the facts he claimed to have proved, as controlling evidence, of his honest belief in his ownership of the property taken, viz., the claimed fact that he took the property openly under an open claim of ownership. This claim is loosely expressed, and framed in language perhaps not quite consistent with the statement of the case in the finding. The absence of a request by the defendant to charge, cannot be supplied by statements in the reasons of appeal.

As a claim of error for failure to comment, or for unfairly commenting upon the weight of evidence, it is not supported by the finding. It appears that the evidence affecting the defendant's belief in his ownership included testimony on the part of the State that Knight owned the heifer and the defendant did not; that the defendant knew that Knight owned the animal and knowing this drove her from Knight's possession to his own premises and there immediately marked her with the identifying mark of his own cattle; and included evidence on the part of the defendant that he and not Knight owned the heifer; that he drove her from the pasture where she was in his own possession, and did not at that time mark her with his identifying mark, but that such mark was placed on the heifer (which he had himself raised) nearly a year previous and within about eight weeks of her birth; and also that he took her openly and openly made claim to her ownership. However important in most cases may be the fact that an alleged thief took the property openly and under a claim of ownership, as tending to prove an honest belief in his own ownership of the property, it is patent that in a case like this, such facts, if proved, may not necessarily be inconsistent with a guilty knowledge.

In the present case it is entirely clear that the contested, guilty knowledge, turned largely upon the question of ownership and various acts of the defendant in controversy, and that the testimony in respect to his open taking and claims of ownership may have been entitled to very little weight. It was within the discretion of the court, and may have been its duty, to let the jury understand, either directly or indirectly, its own opinion upon the weight of this evidence, so long as it was done fairly and properly and within the limits fixed by law.

It must be presumed that the court did act fairly and properly in any reference it may have made, or omitted, in respect to the claims now urged by the defendant. It is sufficient, however, that the record does not disclose that the court did, or did not, call the attention of the jury to claims

upon matters of evidence as stated in the defendant's reason for appeal.

The exception to the portion of the charge quoted, as failing to state accurately and fairly the law on the subject of felonious intent, is not well taken. The statement or intimation that the court did not fairly call the attention of the jury to the force of facts claimed by the defendant to have been proved, is not supported by the record, and must be presumed to be incorrect. To present a question or questions like this, the record must be framed for that purpose, —presenting fully the state of evidence and a statement of what the court did say.

Upon the trial the State produced as a witness one Charles E. Haskell, a boy ten years of age. He testified that in October, 1900, by direction of the defendant, for whom he then worked, he assisted the defendant in driving up the red heifer in question to the defendant's barnyard, and that there the defendant cut a hole in her left ear with a punch. On cross-examination he testified that in the fall of 1900, and in June after the red heifer was replevied, he had talked with Mr. Knight and one Ira Main about this, and the cross-examination then proceeded as follows (referring to the conversation in the fall) : " Q. What did you tell them ? A. They asked me if I had seen any red heifer and I told them, yes. Q. What else did you tell them ? A. I told them Mr. Main marked one. Q. What else did you tell them ? A. I never told them nothing else. Q. Didn't you tell them where he marked it? A. No, sir."

The defendant, afterward, to contradict this witness, called said Knight and asked him the following questions, which, upon objection by the State, were excluded, the defendant duly excepting : " State whether or not last fall the Haskell boy told you he saw Mr. Main cut a hole into this red heifer's ear. State whether or not last fall the boy, Charles Haskell, told you and Ira Main, when you were together, that he saw Davis and Lafayette Main have this red heifer in the yard at the old house and cut a hole in her ear."

It is clear that these questions were not asked for the pur-

pose of contradicting the boy's testimony in chief—that he
saw the defendant mark the heifer in October, 1900. They
were asked, and the defendant's counsel in his brief expressly
claims that they were asked, for the purpose of contradicting
the statements made by the boy on cross-examination.

He was not cross-examined as to any statement made out of
court inconsistent with his testimony, but as to what he had
told Mr. Knight, and Mr. Knight was not produced as a wit-
ness for the purpose of disproving the boy's denial of having
made a statement out of court inconsistent with his testimony,
but for the purpose of contradicting the boy's version on
cross-examination of a conversation with Knight consistent
with his testimony. The particular statement to which the
questions excluded applied, was this : the boy had said that
he had told Mr. Knight in the fall of 1900 that the defendant
had marked the heifer and told him nothing else ; he was
then asked : " Didn't you tell him where he marked it ? " And
he answered, " No, sir." To contradict this Mr. Knight is
asked : " State whether or not last fall the Haskell boy told you
that he saw Mr. Main cut a hole into this red heifer's ear. " It
is apparent that no answer to this question would fairly con-
tradict the substance of the boy's testimony, assuming the
contradiction to be proper. If Mr. Knight answered in the
affirmative, his answer would tend to confirm the truth of the
boy's evidence in chief, and the substance of his statement
on cross-examination. The material thing, if the matter were
material at all for the purpose of contradiction, was that the
boy told Knight that the defendant had marked the heifer.
It was not material if he was incorrect in saying he had not
told him where he had marked her. On the other hand, if
Mr. Knight's answer were in the negative, it would tend to
prove the truth of the precise statement the defendant was
seeking to contradict. Possibly the defendant's counsel had
in mind something which his cross-examination of the boy
and the questions put to Mr. Knight were not adapted to
accomplish ; if so, the purpose does not clearly appear from
the recitals in the record, nor from the claims made in his
brief. The court did not err under the circumstances of the

case in excluding these questions as being improperly put for the claimed purpose of contradicting the witness Haskell.

The other exceptions to rulings on evidence are not well taken; they present questions which are neither novel nor doubtful.

The main grievance of the defendant, in respect to the ruling of the court that counsel was not entitled to state or to read to the jury that part of the statute which merely prescribes the punishment for the offense charged, is that he was unduly restricted in urging upon the jury the exercise of a deliberate caution proportioned to the seriousness of the crime. There is one rule for the protection of an accused against an unjust conviction of crime. In every case the jury must be satisfied of guilt beyond a reasonable doubt, and is charged with the same duty of deliberate caution; but undoubtedly that duty is in fact more readily appreciated by the jury in trials for the graver crimes. For this reason latitude may, in some cases, be allowed counsel in referring to matters of general knowledge affecting the nature and gravity of the offense charged, not strictly a part of the case submitted to the jury, dependent in its extent upon the peculiar character of the case, and largely upon the discretion of the trial court. In the present case the record does not show that any question of this kind was passed upon by the court; its attention was not called to any special reason for permitting a wide latitude in commenting on the serious nature of the offense, and the ruling made was not in itself a prohibition of reasonable comment of this nature.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.