### STATE OF CONNECTICUT *v.* LUIS CABALLERO
### (AC 16007)

O'Connell, C. J., and Spear and Sullivan, Js.

Argued February 24—officially released July 21, 1998

*Tara L. Knight*, special public defender, for the appellant (defendant).

*Ellen A. Jawitz*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Warren Maxwell*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (3)[1] and

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

53a-49 (a) (2).[2] On appeal, the defendant claims that the trial court improperly (1) denied his motion for acquittal, determining that there was sufficient evidence to convict him on the attempt charge, (2) marshaled the evidence in favor of the state during its charge to the jury and (3) impeded the defendant's ability to question prospective jurors during voir dire examination. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 17, 1994, at approximately 8:15 p.m., Thomas Grodecki, an officer with the Hartford police department, was on patrol, driving north on Washington Street. As Grodecki turned onto Ward Street, he observed a man, later identified as the defendant, quickly approach the victim from behind. The defendant grabbed the victim's neck and pulled at the gold necklace he was wearing. The victim struggled against the defendant's attack and tried to prevent the defendant from stealing the necklace. During the struggle, the necklace broke and was caught by the victim. The defendant then took a pocketknife from his waistband and held it to the victim's neck.

By this time, Grodecki had exited his car and was approaching the men. The defendant ran away, but Grodecki apprehended him after a brief chase, during which the defendant dropped his knife to the ground. Grodecki retrieved the pocketknife, arrested the defendant and arranged to have him taken to police headquarters. Grodecki then attempted to interview the victim, but the man spoke little English and was too agitated to communicate clearly. As a result, Grodecki did not obtain a

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

signed, sworn statement from the victim regarding the circumstances of the attempted robbery. The only information that was solicited from the victim was a name and address. At the end of the interview, Grodecki did not tag the necklace into evidence and allowed the victim to retain possession of it.

At trial, the state presented the testimony of Grodecki, the only witness to the crime, and Stephen Looby, an inspector from the Hartford state's attorney's office. Looby testified that he attempted to serve a subpoena on the victim, but was unable to locate him because he had provided a false address. Accordingly, the victim did not testify at trial. The defense called no witnesses. After a jury trial, the defendant was found guilty of attempted robbery in the first degree. This appeal followed.

I

We first address the defendant's claim that the trial court improperly denied his motion for acquittal, determining that there was sufficient evidence to sustain the defendant's conviction of attempted robbery in the first degree. We disagree.

"[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 132, 646 A.2d 169 (1994), quoting *State* v. *Grant*, 219 Conn. 596, 604, 594 A.2d 459 (1991). "It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury. We do not sit as a seventh juror empowered to cast an overriding vote over the jury of six that actually heard the case. *State* v. *Brunori*, 22 Conn. App. 431, 434–35, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). On appeal, we do not ask whether

there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports a jury's verdict of guilty. *State* v. *Sivri*, [supra, 134]. Our Supreme Court has stated that the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . *State* v. *Scielzo*, 190 Conn. 191, 197, 460 A.2d 951 (1983)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Godfrey*, 39 Conn. App. 1, 8–9, 663 A.2d 1117 (1995) (*Spear, J.*, dissenting), appeal dismissed, 236 Conn 904, 670 A.2d 1305 (1996). "On appellate review . . . we do not resurrect hypotheses of innocence that the jury obviously rejected, but instead review the evidence pursuant to the familiar two-pronged analysis stated [hereinafter]." Id., 11.

"In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Goodrum*, 39 Conn. App. 526, 531–32, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995).

The defendant specifically claims that the evidence was insufficient to sustain his conviction of attempted robbery in the first degree because the state did not

prove two necessary elements of that crime: (1) that he intended to permanently deprive the victim of his necklace, and (2) that the taking of the necklace, had it been accomplished, was wrongful. See General Statutes §§ 53a-118 (a) (3),[3] 53a-119,[4] 53a-133[5] and 53a-134 (a) (3). At trial, the state presented evidence that the defendant approached the victim from behind, grabbed him around his neck, yanked at his gold necklace and held a knife to his neck when he resisted. On the basis of evidence of the defendant's conduct, we conclude that the jury reasonably could have inferred that the defendant intended to permanently deprive the victim of the gold necklace. See *State* v. *Garcia*, 37 Conn. App. 619, 627, 657 A.2d 691, cert. denied, 234 Conn. 917, 661 A.2d 97 (1995) (intent may be and usually is inferred from conduct).

In addition, the evidence was sufficient to establish that the defendant's conduct was wrongful. The taking of property is "wrongful" when it is done "without color of right or excuse for the act." *State* v. *Kurvin*, 186 Conn. 555, 568, 442 A.2d 1327 (1982). There was no evidence from which the jury reasonably could have inferred that the defendant was acting under color of right or excuse.

---

[3] General Statutes § 53a-118 (a) (3) provides in relevant part: "To 'deprive' another of property means (A) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him . . . ."

[4] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[5] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

For a taking to be wrongful, however, it must also be done "without the knowing consent of the owner." Id. The defendant asserts that the state cannot prove that the victim was the owner of the necklace and, thus, that the attempted taking was wrongful, because the victim did not offer a signed, sworn statement or testify as to his ownership at trial. General Statutes § 53a-118 (5) defines "owner" as "any person who has a right to possession superior to that of a taker, obtainer or withholder." Our Supreme Court "has not defined with specificity what the state must prove with regard to the victim's interest in the property, when that interest is arguably something less than full possessory ownership." *State* v. *Crosswell*, 223 Conn. 243, 253, 612 A.2d 1174 (1992). The *Crosswell* court held, nevertheless, that "a showing that the victim had *custody or control* over the appropriated property is sufficient to support a charge of larceny." (Emphasis added.) Id., 254. We conclude that the jury reasonably could have found from the evidence that the victim, who was wearing the necklace when the defendant attempted to take it, had, at a minimum, custody and control of the necklace. The defendant's attempted taking of the necklace, therefore, was wrongful because it was without the owner's consent.

Finally, the defendant asserts that the evidence was insufficient to establish his guilt of attempted robbery in the first degree because it was predicated only upon the testimony of Grodecki. Our Supreme Court has held, however, that "a single witness is sufficient to support a finding of guilt beyond a reasonable doubt. It is not uncommon for an accused to be found guilty upon identification by only the complaining witness, and it is not the law that corroboration is essential to the proof of guilt." (Internal quotation marks omitted.) *State* v. *Whitaker*, 215 Conn. 739, 756–57 n.18, 578 A.2d 1031 (1990). After thoroughly reviewing the record, evidence

and trial transcripts, we conclude that Grodecki's testimony was sufficient to establish the defendant's guilt beyond a reasonable doubt.

## II

The defendant's second claim is that the trial court unfairly marshaled the evidence in favor of the state during its charge to the jury in violation of the defendant's federal and state constitutional rights to due process. The defendant did not raise this claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] We conclude that the defendant's claim fails the third prong of *Golding*.

The standard of review of jury instructions is well established. "[A] trial court often has not only the right, but also the duty to comment on the evidence. . . . Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case. . . . The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter. . . . The test of a court's instruction is whether, taken as a whole, [it] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Bispham*, 48 Conn. App. 135, 140, 708 A.2d 604,

---

[6] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

cert. granted on other grounds, 244 Conn. 929, 711 A.2d 728 (1998).

The defendant argues that the trial court improperly emphasized the state's evidence while making "terse mention" of the defendant's evidence. A review of the jury charge, however, indicates that although the trial court provided a more detailed account of the state's evidence, it fairly summarized the defendant's theory of defense, which asserted that the state's evidence was insufficient to establish his guilt beyond a reasonable doubt. The defendant did not testify at the trial. Simply stated, "One reason more time was spent in marshaling the state's evidence is that there was more of it." *State* v. *Ash*, 33 Conn. App. 782, 798, 638 A.2d 633, rev'd on other grounds, 231 Conn. 484, 651 A.2d 247 (1994). "While the court's comments must be fair so as to not mislead the jury, [t]he nature and extent of a court's comments depend largely on the facts of a case and the manner in which it was tried." (Internal quotation marks omitted.) *Bank of Boston Connecticut* v. *Ciarleglio*, 26 Conn. App. 503, 507, 604 A.2d 359, cert. denied, 221 Conn. 922, 608 A.2d 685 (1992).

In addition, the trial court repeatedly instructed the jurors that they were the ultimate judges of factual issues and that they were to rely on their own recollections of the evidence where it differed from the court's recitation of it. On the basis of our review of the record, including the charge, we conclude that the trial court did not marshal the evidence so as to unduly prejudice the defendant or deprive him of his right to due process. As such, the defendant's claim fails under the third prong of *Golding*.[7]

### III

The defendant's final claim is that the trial court improperly impeded the defendant's questioning of prospective jurors during voir dire examination. Specifi-

[7] See footnote 6.

cally, the defendant argues that he was precluded from making intelligent use of his peremptory challenges in violation of his statutory and state constitutional rights. The defendant did not raise this claim at trial and now seeks review of it under *State* v. *Golding*, supra, 213 Conn. 233.[8] We conclude that the defendant's claim fails the third prong of *Golding*.

We recognize that "the right to question prospective jurors in a criminal proceeding is a fundamental right that contributes to a fair trial. 'The right to question each juror individually by counsel shall be inviolate.' Conn. Const., art. I, § 19, as amended by art. IV of the amendments." *State* v. *Smith*, 46 Conn. App. 600, 603, 700 A.2d 91, cert. denied, 243 Conn. 935, 702 A.2d 642 (1997); see also Practice Book § 848, now Practice Book (1998 Rev.) § 42-12. The purpose of voir dire examination is to " 'facilitate [the] intelligent exercise of peremptory challenges and to help uncover factors that would dictate disqualification for cause.' " *State* v. *Robinson*, 237 Conn. 238, 248, 676 A.2d 384 (1996), quoting *Nebraska Press Assn.* v. *Stuart*, 427 U.S. 539, 602, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) (Brennan, J., concurring).

It is also well established that "the trial court is vested with broad discretion in determining the scope of counsel's inquiry [during voir dire]. . . . The court has a duty to analyze the examination of venire members and to act to prevent abuses in the voir dire process. . . . Therefore, the court's actions ordinarily will not be disturbed unless the court has clearly abused its discretion or it appears that prejudice to one of the parties has resulted." (Internal quotation marks omitted.) *State* v. *Malave*, 47 Conn. App. 597, 602, 707 A.2d 307, cert. granted on other grounds, 244 Conn. 913, 713 A.2d 832 (1998).

---

[8] See footnote 6.

The defendant lists eleven examples of the trial court "hamstringing" his questioning of prospective jurors.[9] After careful review of the voir dire examination, we find that the trial court did not unfairly thwart the defendant's ability to elicit relevant information from the prospective jurors. On the contrary, the defendant was allowed ample opportunity to question the prospective jurors regarding their qualifications to sit as jurors, their interest in the subject matter of the action and their relationship to the parties in the case. See *State* v. *Faust*, 237 Conn. 454, 459–60, 678 A.2d 910 (1996). Further, we find that the trial court properly exercised its discretion in precluding the defendant from pursuing irrelevant or repetitious inquiries and in requesting that the defendant rephrase certain questions in a more specific manner. See *Duffy* v. *Carroll*, 137 Conn. 51, 57, 75 A.2d 33 (1950). We conclude that the trial court did not improperly impede the defendant's ability to question prospective jurors during voir dire or prevent him from effectively exercising his peremptory challenges. Accordingly, the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion SPEAR, J., concurred.

O'CONNELL, C. J., dissenting. I do not agree with the majority that the state proved the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable

---

[9] The defendant's examples can be fairly characterized as attempts to delve into the jurors' feelings and attitudes about certain general matters such as newscasts, whether the court system is "too tough or too easy," fear of the city of Hartford, "labeling" of people, the O.J. Simpson trial, and past personal experiences and feelings of being "cooped up" if selected. The defendant offered no citations to any authority, case law or other, in support of any of these specific claims. His reference to *State* v. *Dolphin*, 203 Conn. 506, 512, 525 A.2d 509 (1987), and *State* v. *Higgs*, 143 Conn. 138, 142, 120 A.2d 152 (1956), for the general proposition that counsel should be afforded latitude in voir dire to uncover prejudice does not assist us in defining the boundaries of that latitude here.

doubt requires that each element of the offense be proved, whether directly or circumstantially, in a manner that is consistent with guilt and *that is inconsistent with any other rational conclusion. In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Cobbs*, 203 Conn. 4, 11, 522 A.2d 1229 (1987); *State* v. *Jackson*, 176 Conn. 257, 263–64, 407 A.2d 948 (1978).

In this case, the state was required to prove that the defendant intended to commit larceny. Because larceny is a specific intent crime, the state must show, beyond a reasonable doubt, that the defendant acted with the subjective desire or knowledge that his actions constituted stealing. A specific "intent to deprive another of property or to appropriate the same to himself . . . is an essential element of larceny . . . and as such must be proved beyond a reasonable doubt by the state." (Internal quotation marks omitted.) *State* v. *Fernandez*, 198 Conn. 1, 20, 501 A.2d 1195 (1985).

"As far back as 1902, our Supreme Court recognized that *the mere taking of another's property was not sufficient to prove larceny.* The taking must be accompanied by a felonious intent to deprive the owner of its use. If a person takes property in the honest, though mistaken belief, that he has a right to do so, he has not committed larceny. *State* v. *Main*, 75 Conn. 55, 57, 52 A. 257 (1902). . . . [A] trespass is not theft, except when done with felonious intent. And he who carries away a thing openly, and not clandestinely, to enforce a just claim, not for fraud, not to injure the owner, but to compel him to do what the law requires, is not a thief, whatever the extent of the wrong viewed otherwise. *State* v. *Sawyer*, [95 Conn. 34, 39, 110 A. 461 (1920)]." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Varszegi*, 33 Conn. App. 368, 373–75, 635 A.2d 816 (1993), cert. denied, 228 Conn. 921, 636 A.2d 851 (1994).

"A jury first draws inferences and makes findings of fact. In doing so, it may draw inferences from the facts it found proved, and it is not required to draw only inferences that are consistent with innocence. *State* v. *Tatem*, 194 Conn. 594, 598, 483 A.2d 1087 (1984). In drawing these inferences and finding these facts, however, it may not resort to speculation and conjecture. *State* v. *Mierez*, [24 Conn. App. 543, 554, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991)].

"Once the jury has finished drawing inferences and making findings of fact, it must then determine its ultimate conclusion: whether those facts and inferences prove the defendant guilty beyond a reasonable doubt. *Proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence. State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994)." (Emphasis added; internal quotation marks omitted.) *State* v. *Arbelo*, 37 Conn. App. 156, 160, 655 A.2d 263 (1995). In the present case, there are reasonable hypotheses that could explain the defendant's intent and his subsequent conduct, and thus a finding of guilty beyond a reasonable doubt is improper.

In *State* v. *Crafts*, 226 Conn. 237, 248, 627 A.2d 877 (1993), our Supreme Court held that "intent cannot be inferred directly from results. The fact that a victim was struck by a bullet would not, in itself, support the inference that the perpetrator intended to kill the victim, because the perpetrator might have acted with a variety of mental states. . . . [S]imilarly the jury could not properly have inferred an intent to commit murder from the mere fact of the death of the victim, even from her death at the hands of the defendant." By analogy to the present case, the jury could not properly have inferred an intent to steal from the sole fact that the defendant took a chain from the victim's neck because the defendant could easily have acted with a variety of mental

states, all of which fall short of what is required to support a larceny conviction.

Although the inclusion of a knife in these facts adds an emotional ingredient, it does not alter my opinion. Just as a gun could not be used to infer an intent to murder when a victim was struck by a bullet; see id.; the presence of a paring knife with a two and one-quarter inch cutting edge,[1] does not support an intent to steal.

The fatal weakness in the state's case here is the absence of any evidence, direct or circumstantial, from the victim. The victim did not testify, he did not furnish an oral or written statement that could be introduced in evidence, he was never interviewed at the police station[2] and he gave a false address to the arresting officer at the time of the incident. The chain itself was not introduced in evidence, having been returned to the victim at the scene. Additionally, there is not one scintilla of evidence as to who owned the chain. The jury may not speculate that the chain was the property of the victim.[3] It could just as logically have been the defendant's property that he was retaking or taking as security for a debt owed to him by the victim. Either of these, or countless others, could have been reasonable hypotheses, which it was the duty of the state to exclude. I do not speculate as to these scenarios, just as a jury may not, but point them out merely to indicate that criminal attempt to commit larceny is not the only reasonable explanation for the events observed by the passing officer.

[1] The defendant was not even committing a crime by possessing a knife with a cutting edge of only two and one-quarter inches. General Statutes § 53-206 (a) prohibits carrying a knife only if its cutting edge is four inches or more.

[2] The victim was allowed to walk away from the scene.

[3] I analyze this element in accordance with the statutory definition of owner as meaning "any person who has a right to possession superior to that of a taker, obtainer or withholder." General Statutes § 53a-118 (a) (5).

The evidence here does not exclude every reasonable hypothesis of innocence; see *State* v. *Ford*, supra, 230 Conn. 693; *State* v. *Arbelo*, supra, 37 Conn. App. 161–62; and does not rebut the presumption of innocence. Cf. *State* v. *Morant*, 242 Conn. 666, 687–88, 701 A.2d 1 (1997). At best, the state's case raises a suspicion of attempted larceny by the defendant. This is far from satisfying the state's burden of proving its case beyond a reasonable doubt.

I agree with the majority that corroboration of the complaining witness' testimony is not required, but neither the majority nor the state cite any cases in which a conviction was sustained without any evidence whatsoever from the victim. We are confronted here with the unique circumstances of no evidence, testimonial or otherwise, e.g., a written statement, from the supposed victim. This conviction rests solely on the testimony of a police officer who, while driving by, observed activity from which he concluded that a crime was taking place. I cannot affirm a conviction in which proof beyond a reasonable doubt is based solely on presumptions founded on observations of a drive-by witness.

The facts of this case are strikingly similar to those in *State* v. *Godfrey*, 39 App. 1, 6, 663 A.2d 1117 (1995), appeal dismissed, 236 Conn. 904, 670 A.2d 1305 (1996),[4] in which this court reversed the defendant's conviction of attempted tampering with a motor vehicle and attempted burglary in the third degree. In *Godfrey*, the owner of the car in question was not identified and did not testify. We held that "without direct evidence that the defendant lacked consent [to enter the car], the state's case, at best, raises a suspicion of illegal activity on the part of the defendant. 'This is far from satisfying the state's burden of proving its case beyond a reasonable doubt.' " Id., 7.

---

[4] The state's appeal to the Supreme Court in *Godfrey* was dismissed because the defendant died while the appeal was pending.

It is my opinion that in the matter now before us, the state has failed to prove its case beyond a reasonable doubt by either direct evidence or by reasonable inferences to be drawn from the evidence that was introduced. I would reverse the conviction.

For the foregoing reasons, I respectfully dissent.