## STATE OF CONNECTICUT *v.* JERMAINE YOUNG
(AC 21587)

Foti, Schaller and Mihalakos, Js.

Argued October 25, 2001—officially released February 5, 2002

*Richard E. Condon, Jr.*, deputy assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Jermaine Young, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[1] and 53a-54a[2] and murder in violation of § 53a-54a. On appeal, the defendant claims that the trial court improperly (1) instructed the jury regarding intent and (2) marshaled the evidence presented to the jury in its charge. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 26, 1997, the victim, Dennis Carr, Jr., was standing in a driveway located at 711 Congress Avenue in New Haven with Stacey Footman,[3] Kooley Horne, Roosevelt Green, Marquise Beverly and Carl Harrison. At approximately 10 a.m., a blue Mazda operated by Alan Goodson stopped in front of the driveway. The defendant, who was a passenger in the Mazda, put on a ski mask and began firing a gun out the passenger window of the Mazda into the crowd of people standing in the driveway. The victim was shot in the back of the head and later died as a result of the gunshot wound.

Shortly after the shooting, Goodson and the defendant took the blue Mazda to an auto body shop to have

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with the intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] The state took the position that Footman was the intended victim.

it painted gold. Thereafter, the defendant was arrested in Massachusetts and, at the time of his arrest, provided the police with a false name. In a substitute long form information, the defendant was charged with conspiracy to commit murder and murder.

The trial commenced on October 19, 1999, and the defendant's sole defense was that of mistaken identity. He did not, however, present any witnesses after the state rested its case. After the court instructed the jury, the defendant took an exception to the court's charge, claiming that the court improperly marshaled the evidence regarding motive and consciousness of guilt. The jury returned a verdict of guilty on both counts, and the defendant received a total effective sentence of fifty years. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The defendant first claims that the court improperly instructed the jury on the essential element of intent regarding both the murder and conspiracy to commit murder charges by reading the entire statutory definition of intent provided for in General Statutes § 53a-3 (11).[4] Specifically, the defendant argues that the court violated his due process rights when it read the entire statutory definition of intent, including the portion that states "to engage in such conduct." He claims that the court's instructions improperly permitted the jury to return a verdict of guilty of the charged crime of murder based on a finding that the defendant engaged in proscribed conduct that resulted in the victim's death.[5]

---

[4] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[5] The court instructed the jury in relevant part: "In the [second] count of the information, the state charges [the defendant] with the crime of murder; specifically, that on September 26, 1997, at approximately 9:59 a.m. in the area of 711 Congress Avenue in New Haven, *with the intent to cause the death of another person,* he did cause the death of Mr. Dennis Carr, Jr., by

In addition, the defendant argues that it is reasonably possible that the jury was misled as a result of the court's instruction on the element of intent. He claims

means of a firearm, to wit, a handgun. . . . For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: first, that the defendant *intended to cause the death of another person*; and second, that in accordance with that intent, the defendant caused the death of that person or of a third person. In order to convict the defendant of murder, you must find that the defendant caused the death of Dennis Carr, Jr. You must find proven beyond a reasonable doubt [t]hat Dennis Carr, Jr., died as the result of the actions of the defendant. The state must prove beyond a reasonable doubt that the defendant caused the death of the victim *with the intent to cause the death or with the intent to cause the death of another person*.

"Intent relates to the condition of mind of the person who commits the act; his purpose in doing it. *A person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such a result or engage in such conduct.* . . . The type and number of wounds inflicted as well as the instrument used may be considered as evidence of the perpetrator's intent and from such evidence, an inference may be drawn in some cases that there was *an intent to cause death.* . . . [Y]ou are not required to infer intent from the accused's conduct, but it is an inference that you must draw if you find it is reasonable and logical and in accordance with the instructions on circumstantial evidence. . . .

"Now, as I have stated to you in connection with the [second] count, a person is guilty of murder when, *with the intent to cause the death of [another] person*, he causes the death of such person or a third person. And again, that *person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or engage in such conduct.* A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct and any one of them commits an overt act in pursuance of such conspiracy.

\* \* \*

"Therefore, with respect to the first count of the information, the state must prove beyond a reasonable doubt the following: first, that there was an agreement between the defendant and Alan Goodson to engage in conduct constituting the crime of murder; second, that there was an overt act in furtherance of the subject of the agreement by either the defendant or Alan Goodson. The state claims in this case that an overt act was the shooting of Dennis Carr by the defendant. And, finally, the state must prove that there was the *intent on the part of the defendant, Jermaine Young, that conduct constituting the crime of murder be performed; specifically, conduct which had, as its intent, the death of Dennis Carr or another person.*" (Emphasis added.)

that the court's charge misled the jury because it allowed the jury to find him guilty of both murder and conspiracy to commit murder without ever finding that he specifically intended to cause the death of another person. We disagree.

The defendant concedes that he did not properly preserve his claim for appeal by taking an exception to the charge as given. He seeks review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We will review the defendant's claim pursuant to *Golding* because the record is adequate, and an improper instruction on an element of an offense is of constitutional magnitude. See *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998).

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is]

---

[6] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) "In the absence of any one of these conditions, the defendant's claim will fail." Id., 240.

whether it is reasonably possible that the jury [was] misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 63 Conn. App. 529, 534, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

On several occasions, the court properly instructed the jury that the state was required to prove that the defendant intended to cause the death of another person, whether that person was the victim or another. "Although [w]e agree with the defendant that that portion of § 53a-3 (11) dealing with intent to engage in proscribed conduct is irrelevant to a murder prosecution pursuant to § 53a-54a . . . we conclude that the charge read as a whole did not mislead the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Maia*, 48 Conn. App. 677, 686–87, 712 A.2d 956, cert. denied, 245 Conn. 918, 717 A.2d 236 (1998). Viewing the instruction in its entirety, it was not misleading because the court repeatedly instructed the jury that to find the defendant guilty of murder, it first had to find that the defendant intended to cause the death of another person.[7] Therefore, the defendant cannot prevail under the third prong of *Golding* because he has failed to establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial. See id., 688.

II

The defendant also claims that the court improperly marshaled the evidence in favor of the state in its jury

---

[7] The defendant claims that our holding in *State* v. *DeBarros*, 58 Conn. App. 673, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), is controlling. We distinguish *DeBarros* because the trial court in that case either read or referred back to the entire statutory definition of intent seven to ten times. Id., 678–79. Our review of the charge in the present case reveals that the court read the entire statutory definition only twice. This improper instruction was, however, immediately preceded on both occasions by the proper instruction that "a person is guilty of murder when, with the intent to cause the death of [another] person, he causes the death of such person

instruction, thereby violating his right to a fair trial. Specifically, he argues that the court emphasized the evidence in favor of the state regarding motive[8] and consciousness of guilt[9] while unfairly minimizing the defendant's mistaken identity defense. We disagree.

or a third person." In addition, there were at least four other references to the intent to cause the death of another.

[8] The court instructed the jury regarding motive in relevant part: "In this case, the state is not claiming that it has shown a motive for the defendant to shoot Dennis Carr, Jr., specifically. Rather, it claims that there was evidence presented which, if believed, demonstrated that the defendant had a motive to cause the death of another person, that [person] being Stacey Footman; that he intended to cause the death of Stacey Footman and that as a consequence of acting on that intent, he caused the death of Dennis Carr, Jr. All of this testimony was introduced by the state to establish and corroborate what the state claims was the defendant's motive to commit the crimes charged here. . . . Whether a motive can be found in this case is a determination that you should make and thereafter . . . decide upon the weight such a motive, or absence thereof, should have."

[9] The court instructed the jury regarding consciousness of guilt in relevant part: "The law of our state recognizes a concept known as consciousness of guilt. When a person is on trial for a criminal offense, it is proper for you to consider evidence of the defendant's conduct subsequent to the alleged offense to show that the defendant has a guilty knowledge. . . . You have heard testimony which the state asserts showed that the defendant, knowing that he was wanted for the murder of Dennis Carr, Jr., fled the state and took up residence in Massachusetts, and when arrested, gave a false name. Flight, when unexplained, is a type of conduct which tends to prove consciousness of guilt. The flight of a person accused of a crime and the use of a fictitious identity are circumstances which, when considered together with all of the facts in the case, may justify a finding of guilt. However, neither flight nor the use of [a] fictitious name, if shown, are conclusive. They are to be given the weight [to] which you, the jury, think [it] is . . . entitled under all of the circumstances. In the same way, if a person attempts to alter or conceal evidence of a crime, such conduct may also be considered by you as evidence of consciousness of guilt. In this regard, you have heard testimony that the defendant and an individual known as Alan Goodson took a blue Mazda to be repainted shortly after Dennis Carr, Jr., was shot and killed. The state claims that this evidence was used by the defendant in connection with Mr. Carr's murder and that repainting the blue Mazda was an effort to alter an[d] conceal incriminating evidence. Like the evidence [of] flight . . . and the use of a fictitious name, which I just explained to you, alteration and concealment of evidence can be used by you as evidence tending to show that the defendant was conscious of his own guilt. This evidence of flight, the use of a fictitious name and

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality." (Internal quotation marks omitted.) *State* v. *Dixon*, 62 Conn. App. 643, 647–48, 772 A.2d 166 (2001). "Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case. . . . The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter." (Internal quotation marks omitted.) *State* v. *Caballero*, 49 Conn. App. 486, 493, 714 A.2d 1254, cert. denied, 247 Conn. 924, 719 A.2d 1170 (1998).

As previously stated, we review the entire charge to determine whether it is reasonably possible that it misled the jury. See *State* v. *Rodriguez*, supra, 63 Conn. App. 534. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) Id., 534–35.

the concealment of evidence is admissible to show guilty consciousness and may be evidence that a person is, indeed, guilty. It is for you, however, to decide whether the defendant's actions reflected a guilty mind. Moreover, should you determine that the defendant's actions do provide evidence of a guilty mind, then it is still for you to determine what weight, if any, you wish to [attribute] to this evidence."

The defendant argues that the court made favorable comments in its charge that mirrored the state's theory, but "failed completely to set forth the defendant's position." A review of the charge in its entirety reveals that although the court provided a more detailed account of the state's evidence, it fairly summarized the defendant's theory of defense, which was one of mistaken identity. After instructing the jury regarding the elements of the crimes charged, the court provided a detailed account of the defendant's theory of defense.[10]

In addition, the defendant did not testify, nor did he present any witnesses or evidence in addition to cross-

---

[10] The court instructed the jury regarding mistaken identity in relevant part: "The defendant in this case denies that he is the person who was involved in the commission of the alleged offenses. He is thus . . . raising the issue of mistaken identity. Identification is a question of fact for you to decide, taking into consideration all of the evidence that you have seen and heard in the course of the trial. The state has the burden of proving beyond a reasonable doubt that the defendant was the perpetrator of the crime or crimes charged. The identification of the defendant by a single witness as the one involved in the commission of a crime is, in and of itself, sufficient to justify a conviction of such person provided, of course, that you are satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime.

"In arriving at a determination as to the matter of identification, you should consider all of the facts and circumstances that existed at the time of the observation of the perpetrator by each witness. In this regard, the reliability of each witness is [of] paramount importance, since identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity and ability of the witness to observe the offender at the time of the event and to make an accurate identification later. It is for you to decide how much weight to place on such testimony. In appraising the identification of any witness you should take into account whether the witness had adequate opportunity, an . . . ability to observe the perpetrator on the date in question. This will be affected by such considerations as the length of time available to make the observation, the distance between the witness and the perpetrator, the lighting conditions at the time of the offense, whether the witness had known or seen the person in the past, and whether anything distracted the attention of the witness during the incident. You should also consider the witness' physical and emotional condition at the time of the incident and the witness' power of observation in general. In short, you must consider the totality of the circumstances affecting the identification. Remember, you must be satisfied beyond a reasonable doubt

examination during the state's case-in-chief. "One reason more time was spent in [marshaling] the state's evidence is that there was more of it. . . . While the court's comments must be fair so as to not mislead the jury, [t]he nature and extent of a court's comments depend largely on the facts of a case and the manner in which it was tried." (Citation omitted; internal quotation marks omitted.) *State* v. *Caballero,* supra, 49 Conn. App. 494. After reviewing the charge in its entirety, we conclude that the court did not marshal the evidence so as to unduly prejudice the defendant or deprive him of his right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

of the identity of the defendant as the one who committed the crime or you must find him not guilty."