******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHELDON, J., concurring. Although I agree with and join in the well reasoned opinion of the court, I write separately to address what might appear to be an inconsistency between the rule upon which we rely in deciding this case and the public policy of this state disfavoring the use of violent self-help to resolve private disputes over property. We hold, on the undisputed facts before us, that when the defendant, Tremaine S. Smith, used force and violence to compel the complainant to return the $294 he had given her to hire him a lawyer or to post his bail, he did not commit attempted robbery in the first degree because he lacked the mental state required for commission of that offense. The mental state so required, which is identical to that required for commission of the completed offense of robbery and its included offense of larceny, is now, as it was at common law, the felonious intent to deprive an owner permanently of her property. Consistent with that requirement, our courts have long held that a person who takes, obtains or withholds property from another with the good faith belief that he is the true owner of the property lacks felonious intent to deprive an owner permanently of her property. See, e.g., *State* v. *Main*, 75 Conn. 55, 59, 52 A. 257 (1902). Here, then, because the evidence indisputably shows that the defendant acted with the good faith belief that the property he sought to recover from the complainant was his own, we have held that the essential element of felonious intent to deprive an owner permanently of her property has not been proved.

At the same time as the drafters of our Penal Code sought to preserve the common-law requirement of felonious intent as an essential element of larceny, however, they enacted two other statutes that bear upon the legality of a theft victim's efforts to recover his stolen property from a thief. It is appropriate to consider the impact, if any, of those statutes on the conclusion we have reached today. The first such statute is General Statutes § 53a-118 (b), which provides that "[a] person who has obtained possession of property by theft or other illegal means shall be deemed to have a right of possession superior to that of a person who takes, obtains or withholds it from him by larcenous means." The potential significance of this provision arises from the parallel between its language and that of § 53a-118 (a) (5), which defines the term "owner," for purposes of our larceny statutes, as "any person who has a right to possession superior to that of the taker, obtainer or withholder." In light of that definition, § 53a-118 (b) establishes that a person who takes, obtains or withholds stolen property from a thief commits larceny with respect to such property if he does so "by larcenous means." The statute thus enforces the rule that he who

steals from a thief is a thief, and thus may be prosecuted for larceny or any other offenses requiring proof of larceny on the basis of his conduct.

As the court points out, however, § 53a-118 (b) does not state precisely when the taking, obtaining or withholding of stolen property from a thief is accomplished "by larcenous means." It, therefore, does not distinguish between the use of larcenous means to take, obtain or withhold property from a thief in possession of stolen property and an attempt to commit larceny with respect to such property, and certainly does not create a statutory presumption that any unconsented-to taking, obtaining or withholding of stolen property from the thief—in short, a common-law trespass—constitutes stealing such property from an owner. The statute thus leaves the related questions of the taker's, obtainer's or withholder's use of larcenous means and of the thief's resulting statutory ownership of the stolen property at the time of the taking, obtaining or withholding to be resolved under the established law of larceny. Under that law, to reiterate, the essential distinction between a larceny and a mere trespass is that the former can only be committed by one acting with the felonious intent to deprive an owner permanently of her property. The statute, therefore, does not affect the right of a title owner of stolen property to defend himself against a charge of larceny or robbery that is based upon the taking, obtaining or withholding of such property from a thief in possession of it on the ground that he lacked the felonious intent to deprive an owner permanently of her property because he believed in good faith that the recovered property was his own.

The second statute enacted as part of our Penal Code that bears directly upon the right of a theft victim to recover his stolen property from a thief in possession of it is General Statutes § 53a-21, which provides in relevant part: "A person is justified in using reasonable physical force upon another person . . . when and to the extent he reasonably believes such to be necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force; but he may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19." So written, § 53a-21 does not purport to modify the statutory definitions of or proof requirements for any substantive criminal offense. Instead, it establishes a defense of justification that a theft victim may raise to any charge brought against him that is based upon his use of force to recover stolen property from a thief, provided that his use of force is of the kind, and is made in the manner and under the circumstances, described in the statute. The conduct so justified, as to which the statute affords a complete defense unless the state can disprove it beyond a reasonable doubt when the defendant raises it at trial, is of two types: (1) the use of reasonable

physical force to regain property which the defendant reasonably believes to have been acquired from him by larceny within a reasonable time prior to the use of such force; and (2) the use of deadly physical force in the above-specified circumstances if, but only if, such force is independently justified in defense of person under General Statutes § 53a-19. A claim that the defendant used physical force against another person, of the kind, in the manner, and under the circumstances described in § 53a-21, is a defense to any offense requiring proof of his use or threatened use of force to recover stolen property from a thief in possession of it.

In this case, where the defendant was charged with attempt to commit robbery in the first degree in violation of General Statutes § 53-134 (a) (3), it is undisputed that the defendant could not appropriately have asserted a defense of justification under § 53a-21. The defense was concededly unavailable to the defendant as a matter of law because the kind of force he used against the complainant to compel her to surrender the $294 he had given her to hire him a lawyer or post his bail was deadly physical force, involving, as it did, the use or threatened use of a knife, wielded as a dangerous instrument, for which he had no independent justification in defense of person under § 53a-19. The very different reason why the defendant did not raise the defense, however, as previously discussed, is that his alleged conduct assertedly did not require legal justification because, in the absence of felonious intent, it did not constitute attempted larceny, or thus attempted robbery of any grade or degree.

At first blush it might be seen that the defendant's reading of the larceny statutes, with which we have agreed, is inconsistent with the public policy of this state disfavoring the use of violent self-help to resolve private disputes over property, as embodied in § 53a-21. If the defendant's unjustifiable use or threatened use of force and violence to compel the complainant to return his stolen $294 is not to be punished as attempted robbery in the first degree in this case, it might be asked, what is the purpose of the carefully delineated limitations over the permissible use of force for the retaking of stolen property set forth in § 53a-21? If the effect of the court's interpretation of the larceny statutes is to render § 53a-21 a nullity, should that interpretation be revised by reading § 53a-21 to abrogate the common-law claim of right defense as a basis for disproving the felonious intent element of larceny, at least as applied to larcenies committed by the use or threatened immediate use of physical force—that is, to robberies? Such an interpretation would make any conduct involving the taking, obtaining or withholding of property from another by the use or threatened immediate use of physical force punishable as robbery unless it was justified under the requirements of § 53a-21.

There are two important reasons why the foregoing approach, as advocated by the state, would be unwise and inappropriate. First, it is not our function to rewrite our state's criminal statutes for any purpose, even to accord with what we might find to have been the legislature's pronouncement of public policy in a closely related context, if the legislature has not seen fit to do so itself. Here, the legislature expressly provided that the defense of justification set forth in § 53a-21 would not be available to any person who used deadly physical force to recover his stolen property from a thief in possession of it in the absence of an independent justification for using such force in defense of person under § 53a-19. It did not, however, in § 53a-21, as a statute establishing a defense of justification as to conduct that might otherwise be prosecuted and punished under several different criminal statutes, address itself to the proof requirements of any such statutes, most of which were enacted as parts of the same public act, Public Acts 1969, No. 69-828, by which § 53a-21 and the rest of our Penal Code became law. It therefore cannot be read to have modified the proof requirements of the larceny and robbery statutes even if it is found to be inconsistent with them. Because it is the role and responsibility of the legislature, not the courts, to define crimes and prescribe punishments for them, we must refrain from attempting to resolve any apparent inconsistency between the proof requirements of larceny and robbery and the defense of justification under § 53a-21 by adopting a creative interpretation of the larceny statutes that deprives the defendant, retroactively, of what is still a viable claim of right defense.

My second reason for declining the state's invitation to reinterpret our larceny statutes to enforce the public policy embodied in § 53a-21 is my belief that the court's reading of the larceny statutes is fully consistent with the purposes of § 53a-21, when that statute is properly understood. If, as the drafters of the Penal Code expressly stated, it was their purpose to enforce the common-law felonious intent requirement as part of our larceny statutes, then they doubtless knew that situations would arise in which theft victims would attempt to recover their stolen property from thieves in possession of it. Although an owner's efforts to recover what he believes in good faith to be his own property from a thief would never constitute larceny, or thus be punishable as robbery or attempted robbery, the circumstances in which retakings might be attempted would predictably be fraught with tension, anger or hostility, risking escalation into violent encounters potentially involving the use or threatened use of physical force. There was thus a need to regulate the amount of force that could permissibly be used in such encounters and to limit the circumstances in which the use of such force would be justified. The careful articulation of the defense of justification, as set forth in § 53a-21,

was obviously designed to establish these limitations on the use of force to accomplish the lawful purpose of retaking stolen property from a thief, not to determine the lawfulness, as a threshold matter, of the underlying retaking, which was unquestioned in light of the owner's lack of felonious intent. Against this background, the true purpose of § 53a-21 was therefore not to afford a defense to the crime of robbery, for which it was not necessary, but to afford a defense to other crimes with which a theft victim might be charged on the basis of his predictable use or attempted use of force in an effort to recover his stolen property. Here, then, where the defendant was convicted only of attempted robbery in the first degree, of which he could not be convicted despite the unavailability to him of the defense of justification under § 53a-21, he could appropriately have been charged with and convicted of other offenses involving the use or threatened use of physical force, such as assault, threatening or unlawful restraint, if and to the extent that his proven use of force was not justified under § 53a-21. The statute thus performs its proper and expected purpose by distinguishing between theft victims' justifiable uses of force to recover stolen property, in connection with which they enjoy a complete defense, and other uses of force not justified for that purpose under the statute, on the basis of which they may be prosecuted for and convicted of offenses other than robbery and larceny.

For the foregoing reasons I agree that the defendant's conviction of attempted robbery in the first degree must be reversed and that this case must be remanded with direction to render judgment of acquittal on that charge.

—————————————————