STATE OF CONNECTICUT *v.* MANUEL ARBELO
(12864)

O'CONNELL, HEIMAN and HENNESSY, Js.

Argued November 2, 1994—decision released March 7, 1995

*Linda S. Denholtz,* deputy assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Joseph Harry,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, after a jury trial, of sale of a controlled substance in violation of General Statutes § 21a-277 (b)[1] and conspiracy to sell a controlled sub-

[1] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except

stance in violation of General Statutes §§ 53a-48 (a)[2] and 21a-277 (b). The defendant claims that there was insufficient evidence to support either conviction.[3] We reverse the judgment of the trial court.

The jury could reasonably have found the following facts. On March 1, 1993, Bridgeport detective Thomas Russell was assigned to surveillance of possible drug sale activity at the corner of Maple and Caroline Streets, a known marijuana trafficking area. He was in an unmarked police car, 300 to 400 feet from the target area, watching the area through binoculars. Russell was working with a backup team that was parked where it could not see the target area.

Russell saw the defendant, who was standing on the corner, toss something at a second floor window of a nearby house. Carmelo Rodriguez came to the window and talked to the defendant, and then came down to join him on the street.

Through his binoculars, Russell saw a man, later identified as Edwin Ocasio, walking along Caroline Street. Rodriguez beckoned to Ocasio, and he came over to where the defendant and Rodriguez were standing. The defendant stepped into an alley, came back out, and exchanged something with Ocasio. Russell could not identify what was exchanged.

---

as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] The trial court granted the defendant's motion for judgment of acquittal on another count charging him with possession of a controlled substance with intent to sell.

As Ocasio walked away, Russell relayed Ocasio's description and the direction he had taken to the backup team. Russell watched until Ocasio turned the corner onto Brooks Street, where he was arrested by two police officers. Russell did not see Ocasio put anything into his pockets.

Upon being stopped, Ocasio said, "Okay, you got me, it's in my vest pocket." From Ocasio's vest pocket, one officer retrieved a small plastic bag containing what was later determined to be marijuana. At the time, Ocasio was wearing two jackets over the vest.

Russell then directed the backup officers to move in and arrest the defendant and Rodriguez. The officers drove to where Russell directed them and confronted the men, who offered no resistance. A search incident to the arrest of the defendant yielded $259 in cash in his pockets. No drugs were found on the person of either the defendant or Rodriguez, nor did a thorough search of the alley produce any drugs.

When called upon to review a challenge to the sufficiency of the evidence, we are required to apply a two-pronged analysis. We must first review the evidence presented at trial, construing it in a light most favorable to sustaining the jury's verdict. We then determine whether, from the facts established and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Turner*, 24 Conn. App. 264, 267, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991).

The first count charges the defendant with sale of a controlled substance, specifically marijuana. In common parlance, a "sale" is the exchange of an object for value. The statutory definition of "sale" as applied to illegal drug transactions, however, is much broader and

includes "any form of delivery [of an illegal drug] which includes barter, exchange or gift . . . ." General Statutes § 21a-240 (50).[4]

In the present case, the state was required to prove beyond a reasonable doubt that the defendant sold, as that term is used in the statute, marijuana to Ocasio. *State* v. *Mierez*, 24 Conn. App. 543, 551, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991). A jury first draws inferences and makes findings of fact. In doing so, it may draw inferences from the facts it found proved, and it is not required to draw only inferences that are consistent with innocence. *State* v. *Tatum*, 194 Conn. 594, 598, 483 A.2d 1087 (1984). In drawing these inferences and finding these facts, however, it may not resort to speculation and conjecture. *State* v. *Mierez*, supra, 554.

Once the jury has finished drawing inferences and making findings of fact, it must then determine its ultimate conclusion: whether those facts and inferences prove the defendant guilty beyond a reasonable doubt. "Proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence." *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994).

The weakness in the state's case here is that no state's witness saw money pass from Ocasio to the defendant, nor did any state's witness see any drugs pass from the defendant to Ocasio. Additionally, there is a paucity of circumstantial evidence supporting the state's theory that the brief contact between the defendant and Ocasio resulted in a drug sale. The source of Ocasio's marijuana was never established.[5]

---

[4] General Statutes § 21a-240 (50) provides: " 'Sale' is any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee."

[5] Ocasio did not testify.

Ocasio's words, "Okay, you got me, it's in my vest pocket," do not fairly imply a connection with the defendant as the source of his marijuana. The evidence here does not reasonably exclude the hypothesis that the tiny package could have been there prior to Ocasio's brief contact with the defendant. This is particularly true in view of Russell's testimony that the entire area was known for drug trafficking, specifically marijuana trafficking.

The state's case was further weakened when the search of the alley behind the defendant did not yield any marijuana, nor did the defendant flee when the police officers pulled up and confronted him.

The state properly points out that there is a distinction between proof beyond a reasonable doubt and proof beyond all possible doubt, but it inappropriately relies on *State* v. *Hall*, 165 Conn. 599, 602–603, 345 A.2d 17 (1973). In *Hall*, the defendant handed the narcotics directly to an undercover police officer leaving no room for doubt concerning delivery of an illegal drug.

*State* v. *Mierez*, supra, 24 Conn. App. 553, is much closer to the facts of the present case. In *Mierez*, we reversed a narcotics conviction where the police officers conducting the surveillance were unable to describe the objects that passed between the seller and the buyer. In the case before us, it is significant that although Russell had Ocasio almost continuously in view through his binoculars, he did not see Ocasio put his "buy" under his two jackets and into his vest pocket.

Without Ocasio identifying the source of his marijuana or other direct or circumstantial evidence of a sale, the factual existence of a drug transaction between Ocasio and the defendant rests on speculation and conjecture. At best, the state's case raises a suspicion of drug activity between the defendant and Ocasio. This is far from satisfying the state's burden of

proving its case beyond a reasonable doubt. The evidence does not exclude every reasonable hypothesis of innocence. *State* v. *Ford,* supra, 230 Conn. 693.

The state agrees that if the evidence does not support the first count, it likewise will not support a conviction of conspiracy to sell a controlled substance as charged in the second count.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty as to both counts.

In this opinion the other judges concurred.