## STATE OF CONNECTICUT *v.* ROGER GODFREY
### (13749)

O'Connell, Landau and Spear, Js.

Argued January 10—decision released August 29, 1995

*Dennis F. O'Toole*, assistant public defender, for the appellant (defendant).

*Kimberly A. Graham*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

1

attorney, and *Kevin Murphy*, assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted burglary in the third degree in violation of General Statutes §§ 53a-103[1] and 53a-49 (a) (2)[2] and attempted tampering with a motor vehicle in violation of General Statutes §§ 53a-119b (c)[3] and 53a-49 (a) (2). The dispositive issue is whether the trial court properly denied the defendant's motion for judgment of acquittal. We conclude that the evidence adduced at trial was insufficient as a matter of law to support the guilty verdict.

The jury could reasonably have found the following facts. On October 26, 1993, Officer Daniel Zack of the Hartford police department saw the defendant leaning against and peering into the passenger window and the front windshield of a station wagon that was parked on the street in the area of Allyn and Ann Streets in Hartford. The defendant appeared to attempt to open the passenger side front door of the vehicle, shaking the car door with such force that the car rocked. He then attempted to open the rear door of the station wagon, while looking around to see if anyone was watching him. As Zack

---

[1] General Statutes § 53a-103 provides in pertinent part: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein. . . ."

[2] General Statutes § 53a-49 (a) provides in pertinent part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-119b (c) provides: "A person is guilty of interfering or tampering with a motor vehicle when: (1) He puts into motion the engine of any motor vehicle while it is standing without the permission of the owner except that a property owner or his agent may remove any motor vehicle left without authorization on such owner's property in accordance with section 14-145; or (2) with intent and without right to do so, he damages any motor vehicle or damages or removes any of its parts or components."

approached from behind, the defendant picked up a metal object near the front of the car and then walked to the rear of the station wagon. Believing that the defendant was about to break the window of the vehicle, Zack sprinted toward the defendant and yelled to him. The defendant dropped the metal object and began to run, but had gone only a few steps when Zack caught up with him and arrested him.

After the defendant was transported to the police station for booking, Zack waited for the owner of the station wagon to arrive. Visible inside the car were a number of possessions, including a cellular phone and a pocketbook. The owner did not appear and Zack left a note on the car stating that an arrest had been made and that the owner or operator should call the police if there was any damage to the vehicle. The owner never contacted the police and did not testify at the trial.

During direct examination of Zack, the state asked him if he had determined to whom the car was registered. The trial court sustained the defendant's objection to this question. Outside the presence of the jury, the state then declared an intention to ask Zack whether the car was owned by the defendant. The defendant objected, claiming that the question called for information outside the personal knowledge of the officer and for a response based on hearsay. The trial court overruled the objection. In the presence of the jury, Zack then testified that the defendant was not the owner of the vehicle.

On appeal, the state claims that the jury could reasonably have found that the defendant unlawfully attempted to enter and unlawfully attempted to tamper with the station wagon. The evidence established that he was not the owner of the car and did not possess the key to operate the car. Although the owner was not identified and did not testify regarding consent, the state asserts that common sense would dictate that, if the defendant

had consent to enter the car, he would have had the key to operate it. Even if he had lost the key, the state continues, a person with consent would have contacted a locksmith or requested Zack's assistance in order to gain entry into the car rather than trying to force the door handle or break the window with a metal object. The defendant asserts that, in the absence of testimony from the owner of the car that the defendant was not licensed or privileged to enter or tamper with it, the jury had to resort to conjecture and speculation to find him guilty of both charges.

"When called upon to review a challenge to the sufficiency of the evidence, we are required to apply a two-pronged analysis. We must first review the evidence presented at trial, construing it in a light most favorable to sustaining the jury's verdict. We then determine whether, from the facts established and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Turner*, 24 Conn. App. 264, 267, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991)." *State* v. *Arbelo*, 37 Conn. App. 156, 159, 655 A.2d 263 (1995).

The state first charged the defendant with attempted burglary in the third degree. Section 53a-103 requires proof that the defendant entered or remained unlawfully in a building with the intent to commit a crime therein.[4] "A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." General Statutes § 53a-100 (b). Under the circumstances in this case, the only possible license or privilege of the defendant was that he had consent to enter the station wagon.

---

[4] General Statutes § 53a-100 (a) (1) defines "building" to include any vehicle.

Thus, in order to establish that the defendant's attempted entry was unlawful, the state had the burden of proving that no such consent had been given. See *State* v. *Grant*, 6 Conn. App. 24, 31, 502 A.2d 945 (1986).

With regard to the second charged offense of attempted tampering with a motor vehicle, § 53a-119b (c) required the state to prove that the defendant, with intent and without right to do so, damaged the station wagon or damaged or removed any of its parts or components. Because the defendant was charged with an attempt in both instances, the state had the burden of showing that the defendant, acting with the kind of mental state required for commission of the crime, intentionally did anything which, under the circumstances as he believed them to be, was an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. See General Statutes § 53a-49.

"A jury first draws inferences and makes findings of fact. In doing so, it may draw inferences from the facts it found proved, and it is not required to draw only inferences that are consistent with innocence. *State* v. *Tatum*, 194 Conn. 594, 598, 483 A.2d 1087 (1984). In drawing these inferences and finding these facts, however, it may not resort to speculation and conjecture. *State* v. *Mierez*, [24 Conn. App. 543, 554, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991)].

"Once the jury has finished drawing inferences and making findings of fact, it must then determine its ultimate conclusion: whether those facts and inferences prove the defendant guilty beyond a reasonable doubt. 'Proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence.' *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994)." *State* v. *Arbelo*, supra, 37 Conn. App. 160. "But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible

doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Emphasis needs to be placed on the distinction between the word reasonable and the word possible. . . . Proof of guilt must exclude every reasonable supposition of innocence . . . [while a] mere possible hypothesis of innocence will not suffice." (Citations omitted; internal quotation marks omitted.) *State* v. *Ford*, supra, 693.

Because the state presented no direct evidence that the defendant did not have consent to enter or tamper with the car, it relied on circumstantial evidence for that proposition. The state asserts that Zack observed the defendant vigorously shake the car door handle in an apparent attempt to open the passenger side front door. The defendant, who appeared to be looking around, then attempted to open the rear door. He picked up a metal object near the front of the car and walked toward the rear of the car. At that moment, Zack began to run toward the defendant and yell. Zack testified that when this occurred, he "was pretty much right on top of [the defendant]." The defendant dropped the object and began to run, but "immediately gave up." Zack testified that he believed that the defendant was going to break the car window with the metal object, but he did not see the defendant making any substantial step toward that end.

The state theorizes that one who had permission from the owner to enter the car would not have performed the acts observed by the arresting officer. We cannot conclude, however, that those acts are sufficient to support the conclusion that the defendant, beyond a reasonable doubt, lacked consent to enter or tamper with the car. The evidence here does not exclude the reasonable hypothesis that the defendant did have consent to enter the car and initially ran from Zack because he had been startled. It is reasonable to suppose that the defendant

lost the keys to the vehicle and was unable or unwilling to call a locksmith. In this case, without direct evidence that the defendant lacked consent, the state's case, at best, raises a suspicion of illegal activity on the part of the defendant. "This is far from satisfying the state's burden of proving its case beyond a reasonable doubt." *State* v. *Arbelo,* supra, 37 Conn. App. 161–62.

Applying the two-pronged standard of review, first construing the evidence presented at trial in a light most favorable to sustaining the jury's verdict, and then reviewing the facts established and the inferences reasonably drawn therefrom, we conclude that the jury could not have reasonably concluded that the cumulative effect of the evidence as to the element of lack of consent established the defendant's guilt beyond a reasonable doubt.

The judgment is reversed and the case is remanded with direction to render a judgment of not guilty on both charges.

In this opinion O'CONNELL, J., concurred.

SPEAR, J., dissenting. I respectfully dissent from the majority's conclusion that no rational trier of fact could have found that the circumstantial evidence here was sufficient to prove that the defendant lacked consent to enter or damage the parked station wagon. The jury reasonably could have found certain other important facts in addition to those set out in the majority opinion. Officer Daniel Zack and Officer Michael Manzi of the Hartford police department were traveling in a marked police car when they first saw the defendant near the station wagon. Manzi made eye contact with the defendant as he drove by. After the officers passed the defendant, Manzi observed through a rear view mirror that the defendant started walking away from the station wagon. When the officers reached the next intersection, Manzi

noticed that the defendant started walking back toward the station wagon. After making a left turn at that intersection the officers parked the police car and got out to further investigate the defendant's actions. Both officers were in plainclothes and attempted to approach the defendant unnoticed. The metal object that the defendant picked up as the officers approached was heavy enough to break a window and its size was between that of a baseball and a softball. Approximately one hour after the defendant's arrest and while the defendant was in custody, police officers saw the station wagon being driven away.

The majority correctly points out that challenges to the sufficiency of the evidence are subject to a two-pronged analysis. First, the evidence presented at trial is reviewed and construed in a light most favorable to sustaining the jury's verdict, and we then determine whether the jury reasonably could have concluded that the evidence and the reasonable inferences drawn therefrom established guilt beyond a reasonable doubt. See *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994); *State* v. *Turner*, 24 Conn. App. 264, 267, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991). "It is well settled that in reviewing a defendant's challenge to a verdict based on insufficient evidence, we defer to the jury. We do not sit as a seventh juror empowered to cast an overriding vote over the jury of six that actually heard the case." *State* v. *Brunori*, 22 Conn. App. 431, 434–35, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports a jury's verdict of guilty." *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994). Our Supreme Court has stated that "the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Scielzo*, 190 Conn. 191, 197, 460 A.2d 951 (1983).

Certain other important principles come into play when we review a jury's verdict. "[I]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Ford*, supra, 230 Conn. 693. Under our law, "[w]e presume that the jury uses common sense in its deliberations . . . and is not limited to consideration of the direct evidence but is free to draw reasonable, logical inferences from the facts proved." (Citation omitted.) *State* v. *Harrison*, 30 Conn. App. 108, 118, 618 A.2d 138 (1993). "[J]urors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on the evidence . . . from which inferences can fairly be drawn." (Internal quotation marks omitted.) *State* v. *Smith*, 35 Conn. App. 51, 61, 644 A.2d 923 (1994).

When I review and analyze all of the evidence with the aid of these principles, I cannot conclude that the evidence was insufficient on the element of lack of consent. Particularly telling are the facts that the defendant stopped shaking the door handle when he saw the marked police car and that, as the police car passed the defendant, he started walking away from the station wagon. When the police car got to the intersection, where it turned left, the defendant proceeded back to the station wagon. When the plainclothes officers approached the defendant on foot, he was shaking the rear door handle while constantly looking around. It was certainly

reasonable for the jury to have inferred that the defendant wanted to hide his actions from the police officers and was watching out for them. Such an inference is consistent with a lack of consent. The evidence that the car was driven away approximately one hour after the defendant's arrest while the defendant was still in custody would also have allowed the jury reasonably to infer that someone other than the defendant was the authorized operator of the vehicle that day. This inference is also buttressed by the evidence of the note that the police officers left on the car and the lack of any contact whatsoever from the owner.

The majority correctly cites *State* v. *Ford*, supra, 230 Conn. 693, for the proposition that "[p]roof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence. . . . But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Emphasis needs to be placed on the distinction between the word reasonable and the word possible. . . . Proof of guilt must exclude every reasonable supposition of innocence . . . [while a] mere possible hypothesis of innocence will not suffice." (Citations omitted; internal quotation marks omitted.) The majority posits only possible hypotheses of innocence, such as the defendant could have lost the keys to the vehicle and was unable or unwilling to call a locksmith, and that he initially ran from Zack because he had been startled. The majority view appears to be that of the "seventh juror," an approach that is prohibited by *State* v. *Brunori*, supra, 22 Conn. App. 435.

*State* v. *Sivri*, supra, 231 Conn. 132–36, is instructive in noting that a jury should not render a guilty verdict unless the evidence precludes every reasonable hypothesis except that which is consistent with the defendant's

guilt. On appellate review, however, we do not resurrect hypotheses of innocence that the jury obviously rejected, but instead review the evidence pursuant to the familiar two-pronged analysis stated previously. I conclude that the evidence and the reasonable, common sense inferences properly drawn therefrom established the element of lack of consent beyond a reasonable doubt.

Accordingly, I respectfully dissent.