## STATE OF CONNECTICUT v. NEROY HAMPTON
### (AC 19349)

Schaller, Mihalakos and O'Connell, Js.

---

Argued April 23—officially released October 23, 2001

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Victor Carlucci, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals, following a jury trial, from the judgment of conviction of burglary in the third degree in violation of General Statutes § 53a-103[1] and interfering with an officer in violation of General Statutes § 53a-167a.[2] The defendant was acquitted of attempt to commit larceny in the sixth degree[3] and criminal mischief in the third degree.[4] The defendant

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer . . . in the performance of his duties."

[3] General Statutes § 53a-125b (a) provides: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . . "

[4] General Statutes § 53a-117 (a) provides in relevant part: "A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage; or (2) damages tangible property of another by negligence involving the use of any potentially harmful or destructive force or substance . . . ."

claims that (1) there was insufficient evidence to support his conviction of burglary in the third degree, (2) he was denied his statutory right to a speedy trial, (3) the trial court improperly admitted into evidence out-of-court statements, (4) he was deprived of a fair trial by prosecutorial misconduct, (5) there was insufficient evidence to support his conviction of interfering with an officer and (6) the court improperly instructed the jury on his right not to testify. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Hartford police officers Gregory DePietro and Germaine Coachman were dispatched to an apartment building at 84 Forest Street at 10:53 a.m. on June 16, 1997. Upon arrival at the scene, the building superintendent and a resident informed them that an intruder had broken into a first floor apartment through a window. The superintendent advised them of the apartment number, and Coachman entered the building to secure the apartment from the inside while DePietro moved to secure the exterior of the building.

As Coachman approached the apartment, a black male about five feet, six inches or seven inches tall and estimated to weigh 140 pounds, opened the door, saw Coachman and slammed it shut. At the same time, DePietro, who by then was at the rear of the building, observed an open broken window on the south side of the building. He heard a window opening on the north side of the building, and saw the defendant squatting in the window with one foot on the windowsill and apparently getting ready to jump to the ground. DePietro pointed his gun at him and ordered him to show his hands and get down.[5] The defendant hesitated and

---

[5] On direct examination, Officer DePietro testified as follows:

"A. At that point, I had ordered that individual with gun pointing at him to show me his hands and get down so that I could take control and secure him.

"Q. And you had your gun pointing at him?

then, rather than comply with DePietro's order, retreated into the apartment, jumped out of a window on the south side and ran.

DePietro radioed that the individual had fled and that he was chasing him on foot in a southbound direction. He accompanied the radio broadcast with a detailed description of the defendant. Shortly thereafter, DePietro broke off his pursuit and returned to the apartment building because he had left Coachman there without backup.

Upon entering the apartment, the officers observed a stereo, a videocassette recorder and various household goods stacked against a wall near one of the windows.

Officer Brian Foley was on bicycle patrol in the area when he heard DePietro's communication about the pursuit of a burglary suspect. He saw the defendant, who matched the description, and detained him until a patrol car arrived. The defendant was transported back to 84 Forest Street, where DePietro identified him as the person he had seen coming out of the apartment window and as the same person whom he had chased along the street.

I

The defendant claims that there is insufficient evidence that he (1) entered or remained unlawfully in the apartment and (2) intended to commit a crime therein. We are not persuaded.

We employ a well established standard of review when a defendant challenges a jury's finding of guilt on the ground of insufficient evidence. "In reviewing

"A. Yes.
"Q. And you ordered him to get down?
"A. Yes.
"Q. And you had—Did you identify yourself?
"A. I was in full police uniform. I don't recall if I said 'police.' "

[a] sufficiency [of the evidence] claim, we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the [finding of guilt]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994), quoting *State v. Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993). Moreover, "[i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State v. Sivri*, supra, 132–33. "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State v. Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989).

"A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so." General Statutes § 53a-100 (b). Applying the statutory definition to the present case, we conclude, on the basis of our review of the evidence, that the jury reasonably could have found that the apartment was occupied by another person and the defendant did not live there. As soon as he came to the attention of the police, he jumped from a window and ran, leaving the stereo, videocassette recorder and other household goods piled near a window, permitting an inference that it was an attempt to

gather everything together to be taken from the premises. The defendant's presence in an apartment that was not his own, his attempts to evade police and his flight were sufficient evidence from which the jury could infer that he had entered the apartment unlawfully. See *State* v. *Gradzik*, 193 Conn. 35, 38, 475 A.2d 269 (1984).

The defendant's reliance on *State* v. *Godfrey*, 39 Conn. App. 1, 663 A.2d 1117 (1995), appeal dismissed, 236 Conn. 904, 670 A.2d 1305 (1996), and *In re Adalberto S.*, 27 Conn. App. 49, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992), is unavailing. In *Godfrey*, a police officer observed the defendant leaning against and peering into a parked car. The defendant attempted to open the front door and then the rear door of the car. The officer further observed the defendant look around and pick up a metal object, which the officer surmised that the defendant intended to use to break the window. The officer approached the defendant, whereupon he fled and was apprehended shortly thereafter. The owner of the car was not identified and did not testify. The defendant was convicted of attempt to commit burglary in the third degree and attempt to commit tampering with a motor vehicle. This court reversed the judgment of conviction because there was insufficient evidence to establish that the defendant lacked the consent of the owner to enter the car.

In this case, the officers testified that they were informed by the superintendent and a resident of the apartment building that an intruder had broken into a particular first floor apartment through a window. In addition, there were Coachman's observations of a person slamming the apartment door shut and running through the apartment. Furthermore, the officer in *Godfrey* speculated that the defendant was going to break into the car, whereas the officers in this case directly witnessed the defendant flee from inside of the apartment.

In *In re Adalberto S.*, supra, 27 Conn. App. 49, the respondent was observed by a police officer in a parked car with three other people. All the occupants fled when the officer approached the car. The respondent exited from the backseat and was apprehended a short time later. The vehicle's steering column was damaged, and the engine was running without a key in the ignition. Following a trial to the court, the respondent was adjudicated delinquent by virtue of having used a motor vehicle without the owner's permission. This court reversed the judgment of the trial court because the state failed to prove that none of the occupants had the owner's permission to use the car and that the respondent knew that this was the case.

In *In re Adalberto S.*, a critical aspect of the case was the fact that the respondent was a passenger in the backseat. Taking into account his position in the car, the state could not prove that *he* was using the car without the owner's permission. Rather, the state had to prove that he knew that none of the other people had the requisite permission. In this case, however, there was no evidence that there was another person other than the defendant in the apartment. Considering the circumstances in this case, the evidence was sufficient to justify a conclusion that the defendant had entered the apartment unlawfully.

The defendant next claims that the evidence was insufficient to show that he intended to commit a crime in the apartment. "Generally, intent can only be proved by circumstantial evidence, and, being a mental state, it is proved by the conduct of that person whose conduct is being scrutinized." (Internal quotation marks omitted.) *State* v. *Fields*, 31 Conn. App. 312, 328, 624 A.2d 1165, cert. denied, 226 Conn. 916, 628 A.2d 989 (1993). The fact that the defendant was found within an apartment that was not his own, that he slammed the door in Coachman's face and made a precipitous

exit through a window "permitted a reasonable inference, based on human experience, that the unlawful entry by the defendant was hardly without purpose, but rather was with the intent to commit a crime therein." (Internal quotation marks omitted.) Id. "It is a basic principle of law that common sense is not to be left at the courtroom door. *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985). 'Similarly, in [burglary cases], from the evidence of an attempt to make a forcible entry it is reasonable for the jury to infer an intent to commit theft.' Id., citing *United States* v. *Thomas*, 444 F.2d 919, 924 (D.C. Cir. 1971); *State* v. *Johnson*, 100 Wash. 2d 607, 625, 674 P.2d 145 (1983). In this case, there was an actual forced entry, not simply an attempted entry. . . . 'Common experience tells us that an unlawful entry into a dwelling . . . is not without purpose. Nor are people accustomed to enter homes of strangers through a [window] for innocent purposes. To any person of ordinary intelligence, the expected by-product of a surreptitious unlawful entry into the home of another is theft.' . . . *State* v. *Zayas*, supra, 617; *State* v. *Grant*, 6 Conn. App. 24, 33, 502 A.2d 945 (1986). One would have to suspend reason to find that the defendant had broken into the house in this case intending to do anything other than commit a crime." *State* v. *Perez*, 10 Conn. App. 279, 291, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987).

The defendant further argues that the state was estopped from claiming that he stacked the items near the window because the jury had fully and finally decided that question by acquitting him of a charge of attempt to commit larceny in the sixth degree. We are not persuaded.

In *State* v. *Ortiz*, 29 Conn. App. 825, 831, 618 A.2d 547 (1993), the defendant was acquitted of manslaughter in the second degree with a motor vehicle while under the influence of intoxicating liquor and convicted of

misconduct with a motor vehicle. The defendant argued that because the jury returned a not guilty verdict on the manslaughter charge, it had determined that he was not intoxicated or that his intoxication did not cause the deaths of the victims. Id., 836–37 n.6. This court stated: "Simply put, collateral estoppel principles do not apply in a single trial to preclude a verdict of guilty on an offense which includes elements in common with an offense for which the jury has returned a verdict of not guilty. . . . Consequently, we may rely on evidence of alcohol consumption and its effects in our consideration of whether the evidence was sufficient to sustain the defendant's conviction of misconduct with a motor vehicle." (Citations omitted.) Id. In accordance with *Ortiz*, we conclude that the state was not estopped from asserting that the defendant had stacked the items near the window.

In light of the additional evidence of the personal property that was stacked near the window, we conclude that the state established evidence from which the jury could infer that the defendant had an intent to steal when he entered the apartment.

## II

The defendant next claims that he was denied his constitutional right to a speedy trial.[6] General Statutes § 54-82m[7] codifies a defendant's constitutional right to

---

[6] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

[7] General Statutes § 54-82m provides: "In accordance with the provisions of section 51-14, the judges of the Superior Court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant

a speedy trial and confers on the judges of the Superior Court the authority to make such rules as they deem necessary to establish a procedure for implementing that right. Pursuant to that authority, the judges adopted Practice Book §§ 43-39 through 43-41.[8]

The defendant had been continuously incarcerated for more than eight months and, therefore, was facially entitled to the benefit of § 54-82m. On three occasions, the defendant filed speedy trial motions, two of which were denied by the court and the third of which was withdrawn. The defendant claims that the withdrawal was not voluntary, but was the result of improper information he received from the court.

In his brief and in oral argument, the defendant presented scholarly arguments to support his contention that he is entitled to a dismissal of his case because he did not receive a speedy trial. Those arguments, however, do not take into consideration the final sentence of Practice Book § 43-41, which clearly and unequivocally provides that "[f]ailure of the defendant

shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1)."

[8] Practice Book § 43-41 provides: "If the defendant is not brought to trial within the applicable time limit set forth in Sections 43-39 and 43-40, and, absent good cause shown, a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. For the purpose of this section, good cause consists of any one of the reasons for delay set forth in Section 43-40. When good cause for delay exists, the trial shall commence as soon as is reasonably possible. Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules."

to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules." The defendant failed to file a motion to dismiss prior to the commencement of trial and consequently is deemed to have waived his right to a dismissal.

## III

The defendant next claims that the court improperly allowed the state to introduce out-of-court statements by unavailable witnesses, which were irrelevant for the purposes allegedly offered, but which were clearly prejudicial to the defendant with regard to the burglary charge. On direct examination, DePietro was allowed to testify concerning the radio transmission, which caused him to go to the apartment building. He was also allowed to testify concerning the information he received from the building superintendent when he arrived at the scene. On direct examination, Coachman was allowed to testify that she was responding to the Forest Street address on the basis of a communication that there was a breaking and entering or a burglary in progress at that address. Coachman was also allowed to testify as to the information she received from the superintendent upon her arrival at the scene.

On each occasion of the allowance of that kind of testimony, the court cautioned the jury that it was being admitted solely for the purpose of showing why a witness took certain action. During its closing instructions to the jury, the court charged that "[i]f some evidence was admitted for a limited purpose, you should only consider it for that purpose. We did have some evidence where I allowed police officers to talk about what other police officers were saying to show why they did things, but not to prove the underlying truth. That's what we were talking about with limited purpose." It is well established that out-of-court statements that are not

admitted for the truth of the matters asserted therein, but to establish the facts that led to the witness taking certain action, are not hearsay and are, therefore, admissible. *State* v. *Cruz*, 212 Conn. 351, 357, 562 A.2d 1071 (1989). Because the out-of-court statements were admissible for a permissible nonhearsay purpose and accompanied by appropriate limiting instructions, the court did not abuse its discretion in admitting those statements. See id.

## IV

The defendant next claims that he was deprived of a fair trial by prosecutorial misconduct. We are not persuaded.

The defendant failed to preserve his claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9] Because the defendant fails to demonstrate that a constitutional violation clearly exists that deprived him of a fair trial, his claim fails under the third prong of *Golding*.

Our standard of review of prosecutorial misconduct is well established. "In analyzing this claim, we do not focus solely on the prosecutor's conduct. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Jeudis*, 62 Conn. App. 787, 793, 772 A.2d 715,

___

[9] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

cert. denied, 256 Conn. 923, 774 A.2d 140 (2001). "In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme Court], in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 256 Conn. 291, 297–98, 772 A.2d 1107 (2001).

### A

In his opening statement, the prosecutor stated: "Who is Neroy Hampton? It's our position the defendant, Neroy Michael Hampton, is the one who committed the crimes that the clerk outlined . . . I'll have three witnesses that will testify that Mr. Hampton was in the apartment, had placed items in such a manner illegally in that apartment." The defendant claims that those statements were improper because none of the three officers could testify that he was illegally in the apartment, and the prosecutor expressed his own opinion as to the guilt of the defendant.

We acknowledge that it is improper for a prosecutor to express his opinion, directly or indirectly, as to a defendant's guilt. *State* v. *Singh*, 59 Conn. App. 638, 647, 757 A.2d 1175 (2000), cert. granted on other grounds, 255 Conn. 935, 767 A.2d 1214 (2001). In this case, however, the prosecutor was expressing the state's position, not his own. The prosecutor's comments were an appropriate method of describing the evidence and what the state ultimately intended to prove.

The defendant next claims that the prosecutor, in his opening statement, made improper comments on the basis of inadmissible hearsay. The statements are as follows: "[O]ne [officer] went to the rear to check the windows, where it was reported that someone had entered the building through a broken window . . . . All of them will testify, all of those three officers, that a burglary took place on that day at that location, and that [the defendant] was the one [who] committed that burglary . . . ." The defendant claims that because there was no evidence presented that he had entered through the broken window and that none of the officers could testify that a burglary had taken place or that he had committed the burglary, the prosecutor improperly relied on inadmissible hearsay. The prosecutor was referring to evidence that he intended to introduce in the state's case and, later, when it was introduced, the court gave the jury a limiting instruction on how to consider it.[10] We conclude that, under those circumstances, the prosecutor's comments were not improper.

---

[10] None of the officers had firsthand knowledge that the defendant had entered the building through the broken window. The evidence was derived from a radio transmission that caused the officers to go to the apartment building as well as what the officers were told by the superintendent of the building. During trial, that evidence was introduced, and the jurors were instructed that they could consider the evidence to explain why the officers took certain actions.

## B

The defendant next claims that the prosecutor improperly elicited testimony involving out-of-court identifications of the defendant. On direct examination, DePietro testified that he had witnesses identify the defendant before arresting him. The defendant objected, and the court instructed the jury to disregard the statement about identification. On cross-examination, defense counsel questioned DePietro extensively as to his identification of the defendant. During redirect examination of DePietro, the prosecutor asked if his identification of the defendant was independent of any witnesses, to which he answered, "[Y]es." The defendant claims that the prosecutor's questions were a deliberate attempt to elicit inadmissible hearsay. We conclude that the defendant was not prejudiced by the prosecutor's questions because of the court's instruction to the jury. Furthermore, the prosecutor's questions on redirect were in response to defense counsel's cross-examination and were an attempt to clarify that DePietro's identification was based on his own observations.

## C

The defendant next claims that the prosecutor improperly expressed his opinion in his final argument. The prosecutor stated: "It is the state's position, and you are the finders of facts so you are the ultimate ones. I am giving you my opinion based on the evidence that I put forward, but based on what the judge tells you about the law, what the law is, and you hearing all the facts, you decide ultimately whether the defendant is guilty or innocent. I will tell you my position, our position as the state. Our position is, yes, he is guilty. . . . Someone in a building, an apartment that he doesn't live in. Why is he there? That's up to you to determine. Was he there legally or illegally? It's the

state's position that he was there illegally, attempting to commit larceny. . . . [Y]ou make the conclusions, but it's the state's position that the sole person in there was the defendant, and he took flight. . . . That this individual, Mr. Neroy Michael Hampton, is the defendant and is guilty." In rebuttal argument, the prosecutor stated: "You listened to all the evidence, and all of the evidence clearly points to this defendant as guilty. . . . Was Mr. Hampton in there illegally? We say yes. . . . You weigh the credibility. You've heard all the evidence. You make the decision. Who is Michael—Neroy Michael Hampton? He is the defendant, and he is guilty."

"[B]ecause closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence presented at trial. . . . The mere use of phrases such as 'I submit,' 'I find,' or 'I believe' does not constitute improper argument." (Citations omitted; internal quotation marks omitted.) *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 399–400, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999).

Although the prosecutor did refer to himself in the first person, when viewed in the context of his entire argument, it is evident that this was unintentional and was part of his attempt to express the state's position. We conclude that the prosecutor's comments were an appropriate method of highlighting the evidence presented and what reasonable conclusions could be made by the jury.

The defendant also argues that the prosecutor misstated evidence when he stated that "[n]o one else was in that apartment" because "Coachman had secured the door and was there." The defendant claims that there was no evidence to support the conclusion that there was no one else in the apartment. It is apparent that the prosecutor was merely stating an inference that the jury reasonably could have drawn from the facts. Furthermore, it is not improper for a prosecutor to highlight the evidence that supports the state's position.

Finally, the defendant claims that the prosecutor misstated the evidence when he stated that DePietro said: "Stop. I'm a police officer." In fact, DePietro testified that he did not recall if he said "police." The prosecutor's statement was in the context of describing what occurred when DePietro encountered the defendant in the window. Although DePietro did not remember if he said "police," the jury was free to draw that inference from the evidence presented. We conclude that the prosecutor's statement was not improper.

We conclude that the defendant has failed to establish that a constitutional violation clearly exists that deprived him of a fair trial and, therefore, that he has failed to satisfy the third prong of *Golding*.

In addition, the defendant also claims that in its case-in-chief, the state improperly questioned DePietro on direct examination regarding the value of the equipment stacked in the apartment. The court sustained some of the defendant's objections to that line of questioning and ultimately permitted DePietro to testify only that he had paid $200 for a videocassette recorder. Although the defendant claims that this amounted to prosecutorial misconduct, we conclude that it is an evidentiary claim. Because the claim was preserved properly, we review it and determine that the defendant was not prejudiced by the testimony.

## V

The defendant next claims that there was insufficient evidence to support his conviction of interfering with an officer. He argues that the state (1) failed to prove the kind of acts of physical resistance required to constitute the offense and (2) failed to prove intent to interfere with the performance of an officer's duty. We are not persuaded.

The defendant first argues that to prove him guilty of interfering with an officer, the state was required to prove that he *physically* resisted the officer. A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers a police officer in the performance of his duties. General Statutes § 53a-167a. This court has stated that "General Statutes § 53a-167a . . . defines interfering to *include* obstruction, resistance, hindrance or endangerment. . . . By using those words it is apparent that the legislature intended to prohibit *any* act which would amount to meddling in or hampering the activities of the police in the performance of their duties." (Citation omitted; emphasis in original; internal quotation marks omitted). *State* v. *Laws*, 37 Conn. App. 276, 297, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995). "In enacting § 53a-167a, the legislature sought to prohibit behavior that hampers the activities of the police in the performance of their duties. . . . The statute's purpose is to ensure orderly compliance with the police during the performance of their duties; any act intended to thwart this purpose violates the statute." (Citation omitted.) *In re Adalberto S.*, supra, 27 Conn. App. 56.

In this case, the officer saw the defendant in the window and ordered him at gunpoint to get down and show his hands, whereupon the defendant reentered the building and fled through another window. The broad intent of § 53a-167a is to prohibit conduct that hampers

the activities of the police in the performance of their duties, including physical resistance as well as the defendant's conduct in this case. The evidence in the record is sufficient to support the jury's conclusion that the defendant's actions directly interfered with the officer's performance of his duties in investigating the burglary.

Second, the defendant argues that the evidence is insufficient to prove that he had the requisite mental state of specifically intending to interfere with the performance of an officer's duty. We do not agree.

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inference drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 257, 681 A.2d 922 (1996). The defendant disobeyed the officer's commands to get down from the window, avoided capture by escaping through another window and fled from the officers. Accordingly, the jury reasonably could have inferred that the defendant intended to interfere with an officer by resisting arrest.

## VI

The defendant's final claim is that the court improperly instructed the jury on his constitutional right not to testify.[11] More specifically, the defendant complains that the court referred to his *"failure to testify"* rather than using more neutral language. Whether a reference

[11] In its final instructions to the jurors, the court stated: "The defendant has not testified in this case. An accused has an option to testify or not to testify at trial. He is under no obligation to testify. He has a constitutional right not to testify, and you have an obligation to draw no unfavorable inference from his failure to testify."

to a defendant's "failure" to testify constitutes a constitutional violation as well as a statutory violation under General Statutes § 54-84 (b)[12] is no longer in the realm of speculation. While this appeal was pending in this court, our Supreme Court decided *State* v. *Casanova*, 255 Conn. 581, 597, 767 A.2d 1189 (2001), in which it held that reference to a defendant's "failure to testify" in an instruction pursuant to § 54-84 (b) is proper and that the court is not obligated to substitute more neutral language at the defendant's request. Accordingly, the defendant's claim has no merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] General Statutes § 54-84 (b) provides: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

